UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FAYTIMA HOWARD,

       Plaintiff,                                    Case No. 1:23-cv-12595

v.                                                Honorable Thomas L. Ludington
                                                     United States District Judge

COUNTY OF MACOMB,

       Defendant.
_____/

**OPINION AND ORDER GRANTING THOMAS A. FOX'S MOTION FOR LEAVE TO FILE AMICUS BRIEF, GRANTING DEFENDANT'S MOTION TO DISMISS, AND DISMISSING PLAINTIFF'S COMPLAINT**

      For decades, the Michigan General Property Tax Act (GPTA) directed counties to retain the surplus proceeds from properties sold at tax-foreclosure auction. In 2020, the Michigan Supreme Court decided that the practice of retaining surplus proceeds—codified by the Michigan legislature into state law—was unconstitutional. In response, the Michigan legislature enacted Public Act 256, which provides a process by which former property owners may seek to recover surplus proceeds from the sale of their former property. Plaintiff Faytima Howard, whose property was sold at a tax-foreclosure sale in 2022, did not avail herself of that process, but now sues Macomb County, arguing its retention of the surplus proceeds using the procedures of Public Act 256—despite her failure to claim those proceeds—is a taking under both the federal and state constitutions.

**I.**

**A.**

      Plaintiff Faytima Howard owned property located at 19790 Westchester Drive in Clinton Township, Michigan (the" Westchester Property"). ECF No. 3 at PageID.14. In February 2022,

after Plaintiff had fallen behind on her property-tax obligations, Defendant Macomb County "petitioned for and seized ownership of" the Westchester Property through a Judgment of Foreclosure. *Id.* Seven months later, Defendant sold the Westchester Property at tax auction for $499,007.00, which Plaintiff alleges was "much greater than any [property tax] delinquency." *Id.* She alleges that Defendant "refuses to pay just compensation to Plaintiff" for the Westchester Property. *Id.*

**B.**

In July 2020, the Michigan Supreme Court unanimously held that the retention of surplus proceeds from tax-foreclosure sales according to the then-in-effect GPTA was an unconstitutional taking under Michigan's Takings Clause. *See Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434 (Mich. Ct. App. 2020). At that time, the GPTA "did not provide a mechanism by which former property owners could recover their surplus proceeds." *In re Muskegon Cnty. Treasurer for Foreclosure*, No. 363764, 2023 WL 7093961, at *1 (Mich. Ct. App. Oct. 26, 2023).

In December 2020, in response to *Rafaeli*, the Michigan legislature enacted Public Act 256 ("PA 256"), which "create[d] a controlling and structured system for adjudication of tax-foreclosure disputes as the exclusive means of obtaining surplus proceeds." *Schafer v. Kent Cnty.*, No. 164975, 2024 WL 3573500, at *19 (Mich. July 29, 2024); *see also* MICH. COMP. LAWS § 211.78t (detailing this process). United States District Judge Linda V. Parker recently summarized the relevant statute's process to recover surplus proceeds as follows:

> For property sold after *Rafaeli*, such as the Property here, the GPTA requires a claimant seeking any surplus proceeds to submit a form to the foreclosing governmental unit by the July 1 immediately following the effective date of the foreclosure. [MICH. COMP. LAWS] § 211.78t(2). Foreclosing governmental units must make the form available to the public on their internet websites. *Id.* Additionally, the Michigan Department of Treasury must publish the form on its website. *Id.* Claimants are required to return the form to the foreclosing governmental unit in person or by certified mail, return receipt requested. *Id.*

> If a claim form is timely submitted, the GPTA establishes a deadline for the foreclosing governmental unit to respond by sending the claimant certain information concerning the sale or transfer of the property. *Id.* § 211.78t(3). This information includes the date of sale or transfer, the minimum bid for the property, the amount for which the property was sold or transferred, and other costs lawfully reduced from the proceeds. *Id.* § 211.78t(3)(a)-(i). Also included is notice to the claimant that a motion to claim any remaining proceeds must be filed with the circuit court in the same proceeding in which the judgment of foreclosure of the property was effective. *Id.* § 211.78t(3)(k). The GPTA establishes [a three-and-a-half-month timeframe in] which the motion must be filed. *Id.* § 211.78t(4).

*Metro T. Properties, LLC v. Cnty. of Wayne*, No. 23-CV-11457, 2024 WL 644515, at *3 (E.D. Mich. Feb. 15, 2024).

After *Rafaeli*, federal courts eventually determined that schemes such as Michigan's pre-*Rafaeli* GPTA also violated the Federal Constitution. *See Hall v. Meisner*, 51 F.4th 185, 196 (6th Cir. 2022), *reh'g denied*, No. 21-1700, 2023 WL 370649 (6th Cir. Jan. 4, 2023), c*ert. denied sub nom. Meisner v. Tawanda Hall*, 143 S. Ct. 2639, 216 L. Ed. 2d 1225 (2023), *cert. denied*, 143 S. Ct. 2638 (2023) (concluding that a Michigan county acting according to the pre-*Rafaeli* GPTA "took the plaintiffs' property without just compensation, in violation of the Takings Clause"); *Tyler v. Hennepin Cnty., Minn.*, 598 U.S. 631, 644 (2023) (holding a county's retention of surplus proceeds from a tax-foreclosure sale violates the Fifth Amendment of the U.S. Constitution where there is "no opportunity for the taxpayer to recover" surplus proceeds).

## C.

In October 2023, well after PA 256 was in effect, Plaintiff filed a two-count Complaint against Defendant. ECF No. 3. In Count I, Plaintiff alleges Defendant "has taken" Plaintiff's and the proposed class members' "property interests in the form of surplus proceeds and have appropriated this property for public use without the payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution." *Id.* at PageID.20. In

Count II, Plaintiff pursues a state law inverse condemnation claim against Defendant, alleging Defendant's took the property "without using any direct condemnation processes[.]" *Id.*

On December 11, 2023, Defendant filed a motion to dismiss, arguing that Plaintiff does not have a takings claim under the Fifth or Fourteenth Amendments because PA 256 provides a procedure to recover surplus proceeds from a tax foreclosure sale. ECF No. 9 at PageID.41. Additionally, Defendant argues Plaintiff's inverse condemnation claim "fails as a matter of law" because PA 256 is the *exclusive remedy* for former property owners seeking to recover surplus proceeds and "Michigan law does not recognize an inverse condemnation claim alleging the taking of tax foreclosure[.]" *Id.* at PageID.44; *see also* MICH. COMP. LAWS. § 211.78t. Plaintiff responded, arguing her claims should not be dismissed, ECF No. 15, and Thomas A. Fox—the lead plaintiff in a similar tax foreclosure case[1]—sought permission to file an amicus brief in support of Plaintiff's position, ECF No. 14; *see also Fox v. Cnty. of Saginaw*, No. 19-CV-11887, 2021 WL 120855, at *1 (E.D. Mich. Jan. 13, 2021), *aff'd sub nom. Fox v. Saginaw Cnty., Michigan by Bd. of Commissioners*, No. 21-1108, 2022 WL 523023 (6th Cir. Feb. 22, 2022) (detailing Fox's factual and legal claims).

## II.

Under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) dismissal, the court must accept all factual allegations of the complaint as true and will construe the pleading in favor of the nonmovant. *See Lambert v.*

---

[1] Though Plaintiff and Fox bring similar taking and inverse condemnation claims, Fox's claims arise from events that occurred *before* the Michigan legislature enacted PA 256, which created the surplus proceeds recovery process. *See Fox v. Cnty. of Saginaw*, No. 19-CV-11887, 2021 WL 120855, at *1 (E.D. Mich. Jan. 13, 2021), *aff'd sub nom. Fox v. Saginaw Cnty., Michigan by Bd. of Commissioners*, No. 21-1108, 2022 WL 523023 (6th Cir. Feb. 22, 2022).

*Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

### III.

### A. Plaintiff's Federal Takings Claim

Defendant contends that Plaintiff does not have a takings claim under the Fifth or Fourteenth Amendments because Michigan has furnished a procedure for recovering surplus proceeds from a tax foreclosure sale. ECF No. 9 at PageID.41. *See also* MICH. COMP. LAWS § 211.78t Plaintiff responds that Defendant "misinterprets" federal precedent, ECF No. 15 at PageID.420, and asserts that the relevant caselaw "in no way made a determination that should a state statute or local ordinance provide due process, then there is no federal Takings Clause cause of action. To the contrary, 'state law cannot be the only source.'" *Id.* at PageID.421 (quoting *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 638 (2023). In short, Plaintiff argues that a takings claim is not conditioned on whether a former property owner proactively sought compensation for what the government took, and that former property owners are entitled to compensation *regardless of* whether they seek to redeem those proceeds using Michigan's effort at providing a remedy by statutory procedure. *See id.* at PageID.420–21; *see also* ECF No. 14-1 at PageID.108–10.

But Plaintiff's argument has a problem: a 1956 Supreme Court case, *Nelson v. City of New York*, 352 U.S. 103 (1956). In *Nelson*, the Supreme Court concluded that "*nothing* in the Federal

- 5 -

Constitution prevents [municipalities from retaining surplus proceeds from a foreclosure sale] where the record shows adequate steps were taken to notify the [former] owners of the charges due and the foreclosure proceedings" and the former owners did not undertake "timely action to redeem or to recover[] any surplus" proceeds according to state law. *Id.* at 110 (emphasis added). Importantly, in *Nelson*, the Court explicitly rejected the appellant's argument that the retention of surplus proceeds was a taking under the Fifth Amendment because there was no "statute which absolutely precludes an owner from obtaining the surplus proceeds of a judicial sale." *Id.*

Plaintiff argues that *Nelson* is distinguishable because under the relevant law in *Nelson*, the former property owner could claim the surplus proceeds *during the foreclosure proceeding itself*, whereas Michigan law requires a separate process to claim the surplus proceeds, *after* the sale. ECF No. 14-1 at PageID.107–108; *see also* ECF No. 15 at PageID.421 ("adopt[ing] the arguments of Amici's Brief" on the issue). Notable, indeed. But Plaintiff overlooks the equally notable similarity between the law in *Nelson* and Michigan's current law: in both, there is no "statute which absolutely precludes an owner from obtaining the surplus proceeds of a judicial sale." *Nelson* at 110.

And though *Nelson* is almost 70 years old, modern Supreme Court decisions suggests *Nelson* remains good law. In *Tyler v. Hennepin Cnty, Minn.*, decided in 2023, the Supreme Court reasoned that the ordinance at issue in *Nelson* "simply defined the process through which the [former property] owner could claim the surplus proceeds" and did not "prohibit claiming the surplus proceeds altogether," whereas the statute in *Tyler* "provid[ed] no opportunity" for the former property owner to recover surplus proceeds, and that those proceeds "*always* remain[ed] with the State." 598 U.S. 631, 644 (2023) (emphasis added). This detailed distinction between *Nelson* and *Tyler* certainly suggests the holding in *Nelson* remains legally sound. The Sixth Circuit,

this Court, and Michigan state courts have held the same.. *See, e.g.*, *Metro T. Properties, LLC v. Cnty. of Wayne,* No. 23-CV-11457, 2024 WL 644515, at *4 (E.D. Mich. Feb. 15, 2024) (dismissing plaintiff's federal takings claim under *Nelson* where plaintiff did not follow Michigan's procedure for recovering such proceeds); *Rafaeli, LLC v. Oakland Cnty.*, 952 N.W. 2d 461, 434 (Mich. 2020) ("*Nelson* . . . informs us that no federal Takings Clause claim will exist when there is a statutory path to recover the surplus proceeds but the property owners fail to avail themselves of that procedure."); *Hall v. Meisner*, 51 F.4th 185, 196 (6th Cir. 2022) (emphasizing that "[t]he express basis for the decision in *Nelson*" was that the plaintiffs had not followed the established procedure to recover their surplus proceeds, but the pre-*Rafaeli* GPTA "gave the plaintiffs no such opportunity at all.").

In sum, there is no dispute that if the government takes property from a person, it must compensate that person. But, under *Nelson* and *Tyler*, if the government provides a remedy—that is, a process for that person to *seek* compensation—the government does not unconstitutionally take. Thus, Plaintiff's takings claim will be dismissed.

### B. Plaintiff's State Law Inverse Condemnation Claim

Turning to Plaintiff's state law inverse condemnation claim, *see* ECF No. 3 at PageID.20–21, Defendant argues this claim "fails as a matter of law since Michigan law does not recognize an inverse condemnation claim alleging the taking of tax foreclosure surplus since the adoption of [MICH. COMP. LAWS § 211.78t]." ECF No. 9 at PageID.44. Plaintiffs do not argue otherwise.[2]

---

[2] Plaintiff's response to Defendant's argument here does not dispute the merits, but instead "requests that this Court refrain from any ruling on the state inverse condemnation" until the Michigan Supreme Court addresses the issue in *Hathon v. State of Mich*. ECF No. 15 at PageID.422. On July 29, 2024, the Michigan Supreme Court published its opinion in *Hathon v. State of Mich.*, which did not analyze the propriety of the state-prescribed procedure being the *exclusive* remedy. However, the decision did appear to accept that the state-prescribed procedure is the *exclusive remedy* for seeking surplus proceeds. *See Schafer v. Kent Cnty.*, No. 164975, 2024

Indeed, as the Michigan Court of Appeals recognized in October 2023, former property owners may not seek to recover surplus proceeds under a state inverse-condemnation theory where the recovery procedure outlined in MICH. COMP. LAWS § 211.78t is the *exclusive* means for recovering such proceeds. *In re Muskegon Cnty. Treasurer for Foreclosure*, No. 363764, 2023 WL 7093961, at *4 (Mich. Ct. App. Oct. 26, 2023) ("The specific language of [MICH. COMP. LAWS §] 211.78t indicates our Legislature's intent for the statute to serve as the sole mechanism by which former property owners can recover proceeds remaining after the sale or transfer of their foreclosed properties and the satisfaction of their tax debt and related costs."). And even if Plaintiff was able to pursue her inverse condemnation claim here under Michigan law, it would be dismissed for the same reason her federal takings claim will be dismissed: because Michigan law "now provides an opportunity for [Plaintiff] to recover the [surplus proceeds]," but Plaintiff did not follow that process, so she "did not suffer a compensable taking," *id.* at *8–9 (citing *Nelson v. City of New York*, 352 U.S. 103 (1956)). And the Michigan Supreme Court's recent decision in *Hathon* and *Schafer* did not disturb that conclusion. Accordingly, Plaintiff's Inverse Condemnation Claim must be dismissed, as well.

## IV.

Accordingly, it is **ORDERED** that Thomas A. Fox's Motion for Leave to File Amicus Brief in Opposition to Defendant's Motion to Dismiss, ECF No. 14, is **GRANTED**.

Further, it is **ORDERED** that Thomas A. Fox's Amicus Brief, ECF No. 14-1, is **ACCEPTED AS FILED**.

---

WL 3573500, at *19 (Mich. July 29, 2024) (noting that MICH. COMP. LAWS § 211.78t "create[ed] a controlling and structured system for adjudication of tax-foreclosure disputes as the *exclusive means* of obtaining surplus proceeds.").

Further, it is **ORDERED** that the Defendant's Motion to Dismiss, ECF No. 9, is **GRANTED**.

Further, it is **ORDERED** that Plaintiffs' Amended Complaint, ECF No. 3, is **DISMISSED**.

**This is a final order and closes the above-captioned case.**

Dated: August 6, 2024            s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge